ELLIS, Judge.
This case arises out of an automobile accident which happened in West Baton Rouge Parish on November 7, 1965, between an automobile owned by Miriam Donaldson and operated by Peggy Joann Dyer, plaintiffs, and an automobile owned by Miller Buick Company, Inc., and operat *114 ed by Abel J. Boudreaux, defendants. Plaintiffs are seeking, respectively, property damages and damages for personal injuries. From a judgment rejecting their demands, plaintiffs have appealed.
The accident happened just after dark on U.S. Highway 190, which at the point of the accident is a four lane divided highway running in a general east-west direction.
The accident involved a total of five automobiles. The first three drivers, all of whom were in the inside eastbound lane of the highway, had stopped their cars because of an accident ahead. Dr. Dyer, in the fourth car, was unable to stop before lightly striking the car ahead of her. Mr. Boudreaux, in the fifth car, struck plaintiffs’ car with sufficient force to knock the third car into the second, and the second car into the first.
Mr. Boudreaux testified that the traffic was very heavy at the time of the accident, and that it was moving at about SO or 55 miles an hour. He saw no brake lights come on ahead of him, but saw Dr. Dyer stopped ahead and tried to stop, but was unable to do so, and struck the rear of her car.
Johnny T. Beard, a passenger in the car ahead of Dr. Dyer, testified that the driver was going about 60 miles per hour when the cars ahead of him started “slamming on their brakes”. His driver did the same and stopped about three-quarters of a car length behind the second car. As they stopped, they were struck by Dr. Dyer, but were once again able to stop before striking the second car. Then Boudreaux struck Dr. Dyer, causing the rest of the collisions.
Dr. Dyer testified that when she saw the car ahead of her coming to a stop, she applied her brakes very hard, but was unable to avoid striking it. She was of the opinion that there were three separate impacts, and that Boudreaux hit her at the same time or just after she hit the Beard car.
The district judge found that there was no evidence that Boudreaux was following too close, or that he was travelling at an excessive rate of speed. He concluded that he was not negligent. In so doing, he relied on the case of Volkswagen Insurance Co. v. Tamburello, 210 So.2d 136 (La. App. 4 Cir. 1968), which holds that “while the driver of the following automobile is charged with operating his vehicle so as to have it under control, he is only held liable for not avoiding foreseeable dangers and emergencies whether or not created by the forward driver’s negligence * * *
We are unable to agree with this conclusion. The evidence in this case shows clearly that Mr. Boudreaux was not keeping a proper lookout. All of the cars ahead of the parties to this .case had been able to stop their cars without incident, although proceeding at similar speeds and under similar circumstances. They were able to observe the brake lights of the vehicles ahead in time to stop. Mr. Boud-reaux never saw any brake lights come on at all. There is no evidence that Mr. Boudreaux was following too close. However, his own testimony places him far enough behind Dr. Dyer, so that, if he had seen what he should have seen, he could have averted the collision. His negligence in that respect was the sole proximate cause of the accident.
We find no negligence or contributory negligence on the part of Dr. Dyer of such a nature as to relieve defendants of liability. She may have been negligent in striking the Beard automobile, but her negligence in this respect is entirely unrelated to her being struck by Boudreaux.
We note that Miller Buick Company, Inc., and its insurer, filed an exception of no right or cause of action as to them, alleging that Boudreaux was not in the course and scope of his employment at the time of the accident. The district judge did not find it necessary to decide this point, because he found Boudreaux to be without *115 negligence. The point is neither briefed nor argued on appeal.
Boudreaux was an automobile salesman for Miller, and was driving a “demonstrator”, an automobile regularly furnished for the use of its salesmen by Miller. He was returning to Baton Rouge from Franklin, Louisiana, where he had visited his family. He testified, however, that his job was “continuous”. The insurance policy, which is in the record, covers, under “Automobile Hazards” 1(b), loss arising from the use of any owned automobile while furnished for the use of “any * * * person to whom the named insured furnishes automobiles for their regular use”. Further, under “Persons Insured”, part 3(b), an insured is any person using an automobile insured under “Automobile Hazards”, part 1(b), with proper permission and within the scope of that permission. It would therefore appear that there is coverage afforded under the policy, since Boudreaux clearly is an insured, and the automobile is covered thereby.
With respect to damages, we note that Dr. Dyer was examined on the night of the accident by Dr. Thom, and x-rays were taken. The x-rays were negative, except for some conditions unconnected with the accident. Dr. Thom diagnosed a mild strain of the neck. She saw Dr. Cahen in New Orleans the next day, and he diagnosed a probable sprain or stress of the scalene muscles of the neck. He recommended certain therapy and asked Dr. Dyer to return in one week.
Dr. Dyer testified that she took the therapy for about a week and then quit because it was taking too much of her time. She was then in the final stages of her training as a plastic surgeon, working as a preceptee under Dr. Richard Vincent of New Orleans, and was following a heavy operating schedule. She never returned to see Dr. Cahen, and, in fact, consulted no physician relative to her neck for over two years after the accident. At the suggestion of her attorney, she saw Dr. Ruth Jackson of Dallas, Texas, an orthopedist, in November, 1967.
Her roommate, Dr. Miriam Donaldson (the co-plaintiff), who was then an intern, rubbed her neck and put a heat pad on it every other night. This routine continued for about three months. She received no other treatment or therapy.
In the middle of 1966, after completing her preceptorship under Dr. Vincent, Dr. Dyer went on a five month trip to the Orient. While in Hong Kong about a year after the accident, she began to have episodes of pain and weakness in her right arm and shoulder, so that she had trouble lifting things. She got some relief from heat and massage by Dr. Donaldson, who accompanied her on the trip. When she returned to the United States, she practiced in Dallas, Texas for a while, and then moved to Denton, Texas. She found that she was still having trouble with the weakness in her right arm. She testified that she was forced to limit the number- of hours per day that she could operate to three, and also limited her office hours. She .stated that she would engage in no heavy physical activity for 24 to 36 hours before doing surgery.
Dr. Jackson, who examined Dr. Dyer two years after the accident, made recommendations relative to her sleeping and working pósture, and suggested that she not drive for more than 1}4 hours at a time. Although traction therapy was suggested, none was actually performed. Dr. Jackson was of the opinion that Dr. Dyer had suffered a cervical sprain with associated nerve root irritation, and that she would never get any better.
Dr. Kenneth Cranor, an orthopedic surgeon, testified on behalf of the defendants. He examined Dr. Dyer in March, 1968. His examination was described in great detail in his testimony, but nowhere do we find that he ever gave his diagnosis of Dr. Dyer’s condition. He did not anticipate that there would be any rapid change in her condition, but felt that it would im *116 prove. His examination alone did not reveal any evidence of nerve root irritation, but he did feel that, based on the examination, and the history as related by Dr. Dyer, her condition resulted from the accident. He could find no objective reason why she could not practice as a plastic surgeon in a normal manner. He was also of the opinion that such an episode as Dr. Dyer suffered while in Hong Kong would normally be precipitated by trauma or violent activity of some type, and would not normally occur spontaneously.
Reviewing all of the above, we conclude that Dr. Dyer was injured in the accident, but that her injuries are not as severe or disabling as she claims. Drs. Thom and Cahen, who examined her immediately after the accident, diagnosed a mild cervical strain or sprain. She took therapy for only a week, and voluntarily abandoned it. She never returned to Dr. Cahen, although requested to do so. She carried out a full schedule in her training, and never missed any time on the job. Although, as a medical doctor, she was in a unique position to seek expert advice and treatment, she did neither for over two years after the accident.
The opinions of Drs. Cranor and Jackson are not entitled to the weight they would ordinarily have, since they examined Dr. Dyer over two years after the accident, and must have based their diagnoses primarily on history, rather than on objective findings.
We think that, considering all of the above, an award of $3500.00 for pain and suffering would be justified. Special damages, totalling $165.00, we also proved.
With respect to the claim for lost earnings, we find that plaintiff has failed to carry her burden of proof. Her income in her second year of practice seemed to be commensurate with that of an established plastic surgeon, practicing in a much larger community, who testified in the case. Her testimony as to the amount of money she might make but for her injury is highly speculative and can not form the basis for an award.
The claim of Dr. Miriam Donaldson must be denied, since she failed to prove the extent of her damages. She testified that she received all of her damages except the deductible from her insurance company. However, there is no proof as to the extent of the damages, or as to the amount of the deductible stipulated in the policy.
The judgment appealed from is reversed, insofar as it relates to Dr. Peggy Joann Dyer, and there will be judgment in her favor and against the defendants, for $3665.00, together with legal interest from date of judicial demand until paid. The judgment appealed from is affirmed insofar as it relates to Dr. Miriam Donaldson. All costs are to be borne by defendants.
Reversed in part, affirmed in part, and rendered.